## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**JULIAN MOORE,**

        **Plaintiff,**

**-vs-**   Case No. 6:07-cv-1557-Orl-31GJK

**FEDERATED RETAIL HOLDINGS, INC.,**
**d/b/a Lord & Taylor #117,**

        **Defendant.**
_____

# ORDER

This matter came before the Court without oral argument upon consideration of Defendant's, Federated Retail Holdings, Inc. ("Defendant"), Motion for Summary Judgment (Doc. 41), and Plaintiff's, Dr. Julian Moore ("Plaintiff"), response in opposition thereto (Doc. 45).

## I. Overview and Procedural History

This case involves a doctor whom Defendant falsely accused of shopping lifting at one of its Lord & Taylor retail stores located in Orlando, Florida. Specifically, Count I of the Second Amended Complaint asserts that Defendant negligently trained and supervised its employees to identify store patrons suspected of shoplifting. Count II asserts that Defendant falsely imprisoned Plaintiff by detaining him while its employees falsely accused Plaintiff of shoplifting. Count III asserts that Defendant defamed Plaintiff by falsely accusing him of shoplifting in the presence of other store patrons.

On October 29, 2008, the Court dismissed Count I of the Amended Complaint for failure to state a claim which met the requirements of Florida's "Impact Rule" (Doc. 27, citing *R.J. Humana of Fla.*, 652 So. 2d 360, 362 (Fla. 1995)). Notwithstanding the Court's prior Order, Count I of Plaintiff's Second Amended Complaint still fails to allege any physical injury which would support Plaintiff's alleged emotional distress. Accordingly, Count I of the Second Amended Complaint will be dismissed *sua sponte*.

With respect to the remaining two counts, Defendant contends that it is entitled to a judgment as a matter of law on Count II inasmuch as it is immune from civil liability for false imprisonment under Florida's shopkeeper immunity statute. *See generally* FLA. STAT. § 812.015 ("Section 812.015"), discussed further, *infra*. Defendant further contends that it is entitled to a judgment as a matter of law on Count III because any false accusations concerning Plaintiff's alleged shoplifting were privileged.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (Doc. 27 at 3 n.2). The parties agree that Florida substantive law is controlling with respect to all counts.

## II. Factual Background[1]

On October 9, 2005, Plaintiff entered Defendant's Lord & Taylor store wearing a two-piece fleece jogging suit which he had purchased at the same Lord & Taylor store some two or three months earlier (Doc. 49 at 16, 23-24). While Plaintiff concedes that it was "no doubt" hot that

---

[1] Both parties rely solely on the deposition testimony of Plaintiff in support of, or in opposition to, Defendant's Motion for Summary Judgment. Other than a few exhibits attached to Plaintiff's deposition, no other summary judgment evidence is before the Court.

day (perhaps as warm as 85 degrees) (Doc. 49 at 72-73), Plaintiff was on his way to the airport to return to his home in Flint, Michigan, later that afternoon (Doc. 49 at 73). Unfortunately, the top of the fleece jogging suit that Plaintiff was wearing still had the Lord & Taylor sales tag affixed to it (Doc. 49 at 44).

After entering the store, Plaintiff proceeded to the jewelry department, where he paid for a watch (Doc. 49 at 29). He then attempted to leave the store through its front entrance but was met by one of Defendant's security guards, Travis Taylor ("Taylor"), and one of Defendant's store associates, Martin Michalski ("Michalski") (Doc. 49 at 31). Taylor and Michalski stopped Plaintiff approximately ten feet from the store entrance (Doc. 49 at 31). Taylor told Plaintiff that one of Lord & Taylor's associates had informed him that she had seen Plaintiff putting on the fleece jogging top within the store (Doc. 49 at 32). Plaintiff denied the allegation and told Taylor that he had purchased the jogging top a few months ago (Doc. 49 at 32). Michalski then asked Plaintiff if he had a receipt and went on to state that it was "85 degrees outside" (Doc. 49 at 32). Plaintiff told Michalski that he did not have a receipt and that he was returning to Michigan later that afternoon (Doc. 49 at 32-33). Michalski also asked Plaintiff why there was still a sales tag affixed to the garment (Doc. 49 at 44-45). Plaintiff then offered to show Michalski and Taylor some similar articles of clothing that he had previously purchased at Lord & Taylor which he had packed in his car (Doc. 49 at 33). Michalski told Plaintiff that he would be prosecuted if he left the store with the fleece to go out to his car (Doc. 49 at 33 and 35). Two mall security guards were called to the scene (Doc. 49 at 35). Michalski then gave Plaintiff the opportunity to either take off the fleece and leave it in the store or be prosecuted (Doc. 49 at 35). Protesting his innocence, Plaintiff took off the fleece, left his wallet in the store, and proceeded to retrieve the similar

articles of clothing from his car (Doc. 49 at 35). Taylor and Michalski then told the two mall security guards that they did not need to call the authorities (Doc. 49 at 55). Plaintiff returned to the store with the similar articles of clothing and presented them to Taylor. Unpersuaded, Taylor still insisted that Plaintiff produce a receipt (Doc. 49 at 36). Plaintiff eventually decided to just leave the fleece and was permitted to exit the store and fly home.

At no point during the incident did Michaski, Taylor, or anyone else ever touch or physically intimidate Plaintiff (Doc. 49 at 33 and 83). The entire incident transpired in approximately twenty minutes (Doc. 49 at 37). Plaintiff testified that he could not recall any specific customer who would have overheard any particular remarks from the conversations between him and Taylor, Michalski, and mall security, but that passing patrons could have overhead what was said (Doc. 49 at 88). The discussion, however, was kept at a conversant level and no one was ever yelling or shouting (Doc. 49 at 88). Once Plaintiff returned to Michigan, he was able to produce his receipt for the fleece jogging outfit and Lord & Taylor eventually returned the fleece to Plaintiff along with a written apology (Doc. 49 at 72).

## III. Standard of Review

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F.Supp.2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

## IV. Analysis

### A. Count II - False Imprisonment

With respect to Count II, the parties agree that the presence or absence of probable cause to detain Plaintiff is dispositive of Defendant's Motion for Summary Judgment (Docs. 41 at 7-8 and 45 at 9-10). Indeed, Defendant has moved for summary judgment on Count II on the limited basis that it had probable cause to detain Plaintiff. Defendant therefore contends that it is entitled to immunity under Florida's shopkeeper immunity statute. Plaintiff responds by contending that Defendant did not have probable cause for the detention and therefore cannot be entitled to

immunity. Plaintiff does not challenge the application of Florida's shopkeeper immunity statute on any other ground.[2]

In pertinent part, Florida's shopkeeper immunity statute provides:

(3)(a) A law enforcement officer, a merchant, a farmer, or a transit agency's employee or agent, who has probable cause to believe that a retail theft...has been committed by a person and...that the property can be recovered by taking the offender into custody may, for the purpose of attempting to effect such recovery or for prosecution, take the offender into custody and detain the offender in a reasonable manner and for a reasonable length of time...In the event the merchant...takes the person into custody, a law enforcement officer shall be called to the scene immediately after the person has been taken into custody.

(3)(c) The taking into custody and detention by a law enforcement officer, merchant [or] merchant's employee...if done in compliance with all requirements of this subsection, shall not render such law enforcement officer, merchant [or] merchant's employee...criminally or civilly liable for false arrest, false imprisonment, or unlawful detention.

(5)(a) A merchant [or] merchant's employee...who takes a person into custody, as provided in subsection (3)...shall not be criminally or civilly liable for false arrest or false imprisonment when the merchant [or] merchant's employee...has probable cause to believe that the person committed retail theft...

FLA. STAT. 812.015.

Courts interpreting Section 812.015 have held that the determination of probable cause is a question of law so long as the material facts are not in dispute. *See*, *e.g.*, *Morris v. Albertson's Inc.*, 705 F.2d 406, 409 (11th Cir. 1983)(citing *City of Pensacola v. Owens*, 369 So. 2d 328, 330

---

[2]Plaintiff does, however, devote a significant portion of his response to Defendant's Motion for Summary Judgment on Defendant's alleged failure to follow its own loss prevention policies. Specifically, Plaintiff suggests that "The failure of defendant's employees to abide by [its own loss prevention] policies and procedures lifts the veil of immunity provided by Section 812.015..." (Doc. 45 at 11). Plaintiff also contends that Defendant's failure to adhere to its own corporate policies constitutes negligence *per se* (Doc. 45 at 8). Notwithstanding the fact that Plaintiff has failed to identify any relevant case law holding or even suggesting that the violation of a *corporate* policy – rather than a statute or regulation – has any effect on the application of Section 812.015 or may constitute negligence *per se*, Plaintiff's reliance on Defendant's loss prevention policies is entirely misplaced. Defendant's corporate policies have no bearing on the application of Section 812.015.

(Fla. 1979); *Weisman v. K-Mart*, 396 So. 2d 1164 (Fla. 3d DCA 1981); *Rothstein v. Jackson's of Coral Gables, Inc.*, 133 So. 2d 331 (Fla. 3d DCA 1961). For probable cause to exist, the person detained need not later be found guilty. *Id.* (citing *Food Fair Stores, Inc. v. Kincaid*, 335 So. 2d 560 (Fla. 2d DCA 1976). Indeed, the probable cause necessary to "support a temporary detention of a suspected shoplifter by a merchant or merchant's employee is less than the probable cause required to support a later prosecution," *Id.* (quoting from *Gatto v. Publix Supermarket, Inc.*, 387 So. 2d 377, 379 n. 3 (Fla. 3d DCA 1980)). However, the merchant must have "some reasonable basis to suspect the person" it has decided to detain in order for Section 812.015 to apply. *Morris*, 705 F.2d at 410 (11th Cir. 1983); *see also Weissman*, 396 So. 2d 1164 (Fla. 3d DCA 1981) (finding probable cause where customer re-entered store with stapled package and was observed fumbling with the package and then leaving through an unauthorized exit); *Food Fair Stores*, 335 So. 2d 560 (Fla. 2d DCA 1976)(finding probable cause where customer was seen placing packages of seeds in her pocket and departed store without paying for them); *Rothstein*, 133 So. 2d 331 (Fla. 3d DCA 1961) (finding probable cause where store employee saw customer place merchandise around her waist and then move away from display rack); *Meadows v. F.W. Woolworth Co.*, 254 F. Supp. 907 (N.D. Fla. 1966) (finding probable cause where police had warned store manager to be on the lookout for teenage girls believed to be shoplifting, store manager noticed that two hair pieces were missing, and store clerk had informed manager that teenage girls had been near hair piece counter). Probable cause need not be based on firsthand knowledge and the receipt of information from someone whom it seems reasonable to believe is telling the truth is adequate. *Weissman*, 396 So. 2d at 1167 (Fla. 3d DCA 1981). However, when a merchant relies on a second-hand identification of a potential shoplifter, there can be no probable cause under Section

812.015 when the merchant detains the wrong suspect. *Morris*, 705 F.2d at 409-410 (11th Cir. 1983).

Defendant contends that its employees had probable cause to detain Plaintiff. Specifically, Defendant argues that "Plaintiff was observed wearing a long sleeve fleece jogging sweatshirt identical to those being sold in Defendant's store, with visible merchandise sales tags still attached to it" (Doc. 41 at 9). Together, then, with the unusual circumstance of someone wearing a fleece jogging suit on a hot Florida day, which Plaintiff himself conceded was unusual, Defendant contends that it had probable cause to detain Plaintiff (Doc. 41 at 9).

Plaintiff counters by noting that there is no evidence that any store employee ever saw the tag affixed to the fleece before Plaintiff was detained (Doc. 45 at 7).[3] Plaintiff also contends that there is no evidence that Defendant was still offering the identical fleece for sale at the time of Plaintiff's detention (Doc. 45 at 10). More generally, Plaintiff argues that the facts and circumstances surrounding Plaintiff's detention are in doubt and should properly be reserved for the jury (Doc. 45 at 10).

The Court concludes that there is no genuine issue as to any material fact concerning Defendant's probable cause to detain Plaintiff. As a threshold matter, it is far from clear that Plaintiff was ever detained. Even assuming that he was, however, Plaintiff's own deposition testimony establishes that Plaintiff was wearing the same fleece jogging suit that he had previously

---

[3]Plaintiff also challenges the credibility of Taylor's hearsay statement concerning the accuracy of whether another store employee actually saw Plaintiff put on the fleece in the store (Doc. 45 at 7). Inasmuch, however, as Defendant does not rely on this evidence to support the existence of probable cause, the statement of Defendant's other employee to Taylor is not at issue and has not be considered by the Court.

purchased at Lord & Taylor some two months prior, that the sales tag was still affixed to the clothing, and that wearing a fleece jogging suit on the hot day in question was unusual. The wearing of the fleece on the warm day in question, together with the visible sales tag, constitutes probable cause. Inasmuch as Plaintiff fails to challenge the application of Section 812.015 on any other ground, the Court finds that Defendant is entitled to the protections of Florida's shopkeeper immunity statute. To the extent that Plaintiff was detained by Defendant, he was detained in a reasonable manner and for a reasonable length of time. Defendant's Motion for Summary Judgment on Count II will therefore be granted.

### B. Count III - Defamation

Defendant argues that a merchant's privilege to reasonably detain suspected shoplifters under Section 802.015 should extend to statements made by the merchant's employees in furtherance of, and during, the detention (Doc. 41 at 10). Defendant concedes, however, that no Florida court has ever held that Section 812.015 extends to claims for defamation.[4] *But see Pollock v. Albertson's, Inc.*, 458 So. 2d 74 (Fla. 5th DCA 1984)(per curiam decision affirming trial court's grant of summary judgment, presumably under Section 812.015, to merchant on defamation claim brought by individual falsely accused of shoplifting). Irrespective, however, of whether Section 812.015 extends to defamation claims, Defendant observes that the common law of defamation includes a qualified privilege for statements made in good faith by a merchant's employee concerning a suspected shoplifter. *See, e.g., Canto v. Ivey and Co.*, 595 So. 2d 1025

---

[4]Indeed, the statutory text of Section 812.015 specifically exempts merchants from liability for "false arrest, false imprisonment, or unlawful detention" – not mention is made of claims for defamation.

(Fla. 1st DCA 1992) (holding that, absent malice, defamatory statements made in good faith during detention of suspected shoplifters are privileged). Accordingly, Defendant contends that the statements made by its employees to, and concerning, Plaintiff during his detention are privileged.

Plaintiff responds by noting that "'qualified privilege' is a defense, and the burden of proving it rests with the defendant. Whether the privilege exists or has been exceeded in some manner creates a mixed question of law and fact which normally should be determined by the trier of fact" (Doc. 45 at 14, quoting *Healy v. SunTrust Service Corp.*, 569 So. 2d 458, 460 (Fla. 5th DCA 1990)). Thus, Plaintiff argues that there is no evidence that the allegedly defamatory statements by Defendant's employees were made in good faith.[5]

The undisputed evidence before the Court establishes that Defendant's employees questioned Plaintiff in a reasonable, non-confrontational manner. Although there is some evidence which would suggest that passing patrons might have overheard the conversations between Defendant's employees and Plaintiff, it is unclear how any merchant could ever initiate a detention of a suspected shoplifter without some initial questioning being conducted in the presence of other patrons. Where, as here, a merchant has probable cause to stop and question a suspected shoplifter under Section 812.015, Section 812.015's immunity properly extends to normal (i.e., non-confrontational) questioning. Otherwise, Section 812.015's immunity would be mostly illusory. Accordingly, the Court will grant Defendant's Motion for Summary Judgment on Count III.

---

[5]Plaintiff also continues to insist that Defendant's employees failed to follow Defendant's loss prevention policies and were thus not authorized to detain or make privilege statements concerning Plaintiff (Doc. 45 at 13-14). Again, Plaintiff's reliance on Defendant's loss prevention policy is misplaced.

### V. Conclusion

Based on the foregoing, it is hereby **ORDERED** that Count I of the Second Amended Complaint is **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted. It is **FURTHER ORDERED** that Defendant's, Federated Retail Holdings, Inc., Motion for Summary Judgment is **GRANTED**.

The Clerk of the Court is directed to enter judgment in favor of Federated Retail Holdings, Inc. on all counts in the Second Amended Complaint and close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 20, 2009.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE